IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DATA SPEED TECHNOLOGY LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THOMSON REUTERS CORPORATION, ) <br> THOMSON REUTERS U.S.A. INC., and ) <br> THOMSON REUTERS U.S. LLC, ) <br> ) <br> Defendants. ) | C.A. No. 13-1450 (SLR) <br><br> **PUBLIC VERSION** |

**DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS FOR
<u>LACK OF SUBJECT MATTER JURISDICTION</u>**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP <br> Jack B. Blumenfeld (#1014) <br> Stephen J. Kraftschik (#5623) <br> 1201 North Market Street <br> P.O. Box 1347 <br> Wilmington, DE 19899 <br> (302) 658-9200 <br> jblumenfeld@mnat.com <br> skraftschik@mnat.com |
| OF COUNSEL: |  |
| Edward R. Reines <br> Sonal N. Mehta <br> Evan N. Budaj <br> WEIL, GOTSHAL & MANGES LLP <br> 201 Redwood Shores Parkway <br> Redwood Shores, CA 94065 <br> (650) 802-3000 | *Attorneys for Defendants* |

**Confidential Version Filed: December 16, 2013**

**Public Version Filed: December 23, 2013**

Defendants Thomson Reuters Corporation, Thomson Reuters U.S.A. Inc., and Thomson Reuters U.S. LLC (collectively, "Thomson Reuters") hereby submit this reply in support of their Motion to Dismiss Plaintiff Data Speed Technology LLC's ("Data Speed's") Complaint for Patent Infringement for Lack of Subject Matter Jurisdiction (the "Motion"), pursuant to Fed. R. Civ. P. 12(b)(1).

## I. INTRODUCTION

After almost six months and no fewer than ten opportunities—including informal discussions between the parties in which various defendants sought clarity as to Data Speed's purported standing, and, when that failed, briefing on the various motions to dismiss filed before this Court—Data Speed still remains unable to establish that it has standing to bring this suit.

In the first motion to dismiss filed in Data Speed's parallel actions, defendants Cisco, Microsoft, HP, Oracle, and EMC raised the lack of standing apparent from the assignment record at the USPTO. *See* Motion to Dismiss, D.I. 7 in C.A. No. 13-615-SLR ("*Cisco* Motion"). In response, Data Speed presented a convoluted and confusing chain of title—replete with missing evidence and misconstructions of the evidence it did present—that still fell far short of confirming Data Speed's standing. *See* Opposition, D.I. 11 in C.A. No. 13-615-SLR ("*Cisco* Opposition"). As a result, when it came time for Thomson Reuters to respond to Data Speed's complaint, Thomson Reuters filed this Motion highlighting the continued deficiencies in Data Speed's standing and incorporating the briefing from those previous actions. *See* D.I. 10. In response, almost six months after the initial briefing in the *Cisco* action, Data Speed changed its theory, now relying on a previously-undisclosed assignment document and a different theory by which it purports to maintain these actions. *See* D.I. 13.

But Data Speed's Opposition raises more questions than it answers. Indeed, Data Speed's evolving theories of standing are internally inconsistent and provide no clear explanation of which rights were held when and by whom, or where those rights ultimately ended up. In an attempt to gloss over many of these issues, Data Speed again relies on misconstructions of the evidence that is available and unsubstantiated attorney argument as to multiple links in the purported title chain for which it has not made evidence available. The result is a distinct lack of clarity as to how Data Speed contends it obtained the rights it needs to sue, and a distinct absence of proof that the rights to the patent-in-suit were ever consolidated in any entity, let alone Data Speed.

All told, despite—perhaps, in part, because of—Data Speed's shifting and varied theories of standing, it still has not come forward with evidence sufficient to carry its "burden of proving that it has standing to sue for infringement." Exhibit A to Thomson Reuters's Motion to Dismiss, D.I. 40 [*MayFair Wireless LLC v. Cellco Partnership (d/b/a Verizon Wireless) et al.*, C.A. No. 11-772-SLR-SRF] at 5, 9; *see also* Reply Brief, D.I. 19 in C.A. No. 13-cv-616-SLR at 1-3. The Court should dismiss Data Speed's action for lack of subject matter jurisdiction.

## II.   ARGUMENT

Data Speed relies on numerous assignments and purported assignments to and from the four inventors of the patent-in-suit (Conner, Spar, Hunter, and Anderson), Peter King, King Companies, Peter King's estate, Data Speed Technology Corporation ("Data Speed Corp," a distinct entity from plaintiff Data Speed), Empire IP LLC, and plaintiff Data Speed. ▮

▮

▮

██████ ██████ Declaration of Dorian Berger, D.I. 12 in C.A. No. 13-615-SLR ("*Cisco* Berger Decl."), Exh. 1 at 2; "The invention entitled 'HIGH SPEED REAL TIME CROSS SYSTEM INFORMATION STORAGE SYSTEM' . . .," *Cisco* Berger Decl., Exh. 2 at 11; "all subject matter invented by [three of the four inventors of the patent-in-suit] and disclosed in the [parent application of the patent-in-suit]," Declaration of Dorian Berger, D.I. 14 ("Berger Decl."), Exh. 2 at 5; ██████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██

As best as Thomson Reuters can discern, Data Speed now argues that the chain of title is as follows: on December 30, 1993, inventors Hunter, Spar, and Anderson assigned their rights in the parent application to the patent-in-suit to Data Speed Corp.; on December 31, 1994, Data Speed Corp. assigned its interest to Peter King; on March 24, 2011, King died testate and assigned his interest to the Peter J. King Revocable Trust; on February 13, 2013, the Trust assigned its interest to inventor Conner (consolidating the full interest in Conner); on April 3, 2013, Conner transferred his interest to Empire IP; that same day, Empire IP transferred its interest to plaintiff Data Speed. But the evidence does not support Data Speed's broad-brush assertions, and the chain of title is not nearly as simple as Data Speed implies. Indeed, even

---

1 ██████████████████████████████████████████████

3

giving Data Speed the benefit of the doubt that this history would, in fact, establish standing, Data Speed has not offered the evidence necessary to actually support such a theory.

Although it did not produce or rely on the document in the prior cases, Data Speed now relies on an ostensible—and only recently produced—December 30, 1993 assignment from three of the four inventors (Spar, Hunter, and Anderson, but not Conner) to Data Speed Corp. This assignment purports to assign "all of our right, title and interest in and to all subject matter invented by us and disclosed in the application for [the parent application of the patent-in-suit]." Berger Decl., Exh. 2 at 5.[2] But Data Speed argued previously that, in late 1992, Spar, Hunter, and Anderson had already assigned their rights jointly to King and Conner and jointly to King Companies and Conner. *See Cisco* Opposition at 3. The subject matter of those 1992 assignments was "the entire right, title and interest in any and all inventions" relating to "the subject matter disclosed to and/or discussed with" Spar, Hunter, and Anderson "pursuant to the [aforementioned] Non-Disclosure Agreement." *See Cisco* Berger Decl., Exh. 1 at 2. The assignments do not identify what was "disclosed [] and/or discussed," and there is thus no evidence that the 1992 assignments were actually operative with respect to the patent-in-suit. *See* Declaration of Sonal N. Mehta ("Mehta Decl."), Exh. 1. Nonetheless, in its Opposition to the *Cisco* Motion, Data Speed treats this 1992 assignment as operative and valid. *See Cisco* Opposition. If that were correct, Spar, Hunter, and Anderson would have already assigned away

---

[2] Although Data Speed cites the Manual of Patent Examining Procedure ("MPEP") § 306 as stating that "a patent assignment filed against a parent application is considered effective against any such continuation or divisional application," Data Speed cites no applicable authority to support, and no evidence to demonstrate, that this assignment controls with respect to the patent-in-suit. *See also* MPEP, Forward ("The Manual does not have the force of law or the force of the rules in Title 37 of the Code of Federal Regulations.").

4

their rights, and there would of course be nothing left for them to assign on December 30, 1993—the rights to the patent-in-suit would continue to be owned by King, King Companies, and Conner even after that supposed assignment.

Next, Data Speed asserts that "[on] December 31, 1994, Data Speed Corporation's interest in the '686 patent was assigned to Peter King." Opposition at 3. Data Speed here refers to a December 31, 1994 Settlement Agreement (the "Settlement Agreement") in which ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

---

3     Although Data Speed previously stated that "[o]n April 1, 1993, Peter King entered into an agreement that assigned his rights in the '686 patent to Data Speed Technology Corporation," this appears not to be correct. *See Cisco* Opposition at 3. ███████████ ████████████████████████████████████████████████████████████████ata Speed then asserts that "[o]n March 3, 1994, Data Speed Technology Corporation assigned its ownership interest in the patent application (that would later be the '686 patent) back to Peter King." *Cisco* Opposition at 4. Again, this appears not to be correct. ███████████████████████████████████████████████████████████████████ ███████████████████████

5

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

Data Speed then states that King died testate, assigning his rights to the Peter J. King Revocable Trust (the "Trust"). *See* Opposition at 3-4. But Data Speed has not produced King's will and/or letters testamentary, and has not otherwise proven that this assignment took place according to King's wishes.

Data Speed next asserts that the Trust then assigned its rights to Conner. According to the Settlement Agreement, King had essentially assigned his security interest in the patent to Conner, contingent on Conner paying Data Speed Corp.'s $250,000 debt to King. *See* Berger Decl., Exh. 5 at 9. But Data Speed previously stated that this money was never paid, and there is no other evidence that the security interest was otherwise satisfied. *See Cisco* Opposition at 4. Data Speed presents no alternative theory as to why or for what consideration the Trust would have properly assigned its rights to Conner. ███████████████████████

██████████████████████████████████████████████████

████████████████████████████████

Finally, Data Speed contends that Conner assigned his rights to Empire IP on April 3, 2013, which then transferred its rights to plaintiff Data Speed that same day. Opposition at 4.[4] Here, Data Speed cites only to the USPTO website listing these assignments, but has not produced the assignments themselves for the Court's or Thomson Reuters' examination.

---

[4] According to the screenshot of Public Pair produced by Data Speed, April 3, 2013 is the date on which these assignments were recorded at the USPTO, not the actual date of the assignments. *See* Berger Decl., Exh. 8.

6

### A.     CONCLUSION

Despite many months and many opportunities, Data Speed still has not presented a coherent theory showing it has standing to sue on the patent-in-suit.  Because, once challenged, it is Data Speed's burden to show standing, the Court should dismiss this action for lack of subject matter jurisdiction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*

Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Edward R. Reines
Sonal N. Mehta
Evan N. Budaj
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

December 16, 2013
7854930

7